582 People ex rel. Roebling's Sons' Co. *v.* Wemple. [June,

Statement of case. [Vol. 138.

advanced the money to Speer for the purchase of the Worthington and Cassidy stock. The strict rules which govern the reception of evidence in civil actions are not applicable to a proceeding of this character, and we are of the opinion that no essential right of the appellants was prejudiced by the rulings made.

Upon the whole matter we are of opinion that no substantial error has been pointed out, and that, therefore, the order of the General Term should be affirmed.

All concur.

Order affirmed.

----

The People ex rel. John A. Roebling's Sons' Company, Appellant, *v.* Edward Wemple, Comptroller, etc., Respondent.

Where it is apparent that all that is done in this state by a foreign corporation, organized for manufacturing purposes and engaged in that business in the state of its creation, is some incidental additional work in connection with its manufactured products, sent here for sale, to fit them for market, it may not claim exemption from taxation under the Corporation Tax Law (Chap. 542, Laws of 1880, as amended by chap. 361, Laws of 1881; chap. 359, Laws of 1885, and chap. 353, Laws of 1889), on the ground that it is carrying on its manufacturing business in this state.

In proceedings to review by certiorari the action of the state comptroller in imposing taxes under said act, it appeared that the relator was a manufacturing corporation of New Jersey, having an office and place of business in this state, and owning real estate here; that its business, as specified in its certificate of incorporation, was the manufacture, buying and selling of iron, steel wire, wire rope and all other materials used in connection therewith. Its charter contemplated that its manufacturing operations should be carried on only in New Jersey, but provided that it might have an office and store for the sale of its goods "and the transaction of other business connected therewith" in this state, and that it might carry on out of New Jersey the business of buying and selling materials, making contracts and selling its manufactured products, and of business incident thereto. The relator did not manufacture any iron or steel wire, or wire rope in this state, but its wire is all manufactured in New Jersey and sent to its place of business in this state, where men are employed to fit the goods for market. *Held,*

1893.] People ex rel. Roebling's Sons' Co. *v.* Wemple. 583

N. Y. Rep.]                    Statement of case.

that the relator was not engaged in manufacturing in this state within the meaning of the act, and so was not entitled to exemption from taxation.

In estimating the capital stock of the relator employed in this state as the basis of the tax, the comptroller took the actual value of its property used in its business here instead of the par value of its shares. *Held*, no error.

Also *held*, that in fixing the value of the relator's real estate the comptroller was not bound by the assessment of the local assessors, but as it had failed to comply with the statute requiring it to make annual reports to that officer, he had the right to estimate the value of the real estate according to such information as he could obtain or upon his own judgment.

Reported below, 63 Hun, 452.

(Argued June 5, 1893; decided June 30, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 2, 1892, which confirmed the determination of the comptroller of the state, imposing upon the relator certain taxes, and quashing a writ of certiorari to review the same.

This was a proceeding to review by certiorari the determination of the comptroller of the state in assessing upon the relator taxes under the corporation tax laws for the years 1880 to 1889 inclusive.

The facts, so far as material, are stated in the opinion.

*Duncan Edwards* for appellant. The relator, John A. Roebling's Sons' Co., was, during and including the years 1880–1889, a manufacturing corporation carrying on manufacture within this State, and was, therefore, exempt from the operation of the State Tax Law of 1880 and its amendments prior to the amendment of June 4, 1889. (Laws of 1889, chap. 353; Laws of 1880, chap. 542; *People* v. *K. & Co.*, 99 N. Y. 181; *Lawrence* v. *Allen*, 7 How. [U. S.] 794; *Seeley* v. *Gwillim*, 40 Conn. 106; *People ex rel.* v. *Wemple*, 129 N. Y. 543; *People* v. *H. S. M. Co.*, 105 id. 83; *People* v. *K. I. Co.*, 99 id. 181; *N. G. Light Co.* v. *Brooklyn*, 89 id. 409; *People* v. *D. D. Co.*, 92 id. 487; *Haws* v. *P. Co.*,

101 Mass. 385; *Dudley* v. *A. Co.*, 100 id. 133; *Engle* v. *Sohn*, 41 Ohio St. 691; *Rogers* v. *Danforth*, 9 N. J. Eq. 289; *People ex rel.* v. *Wemple*, 133 N. Y. 323; *Morris* v. *Conner*, 27 Penn. St. 496; *People ex rel.* v. *Coleman*, 126 N. Y. 449; *People* v. *A. B. T. Co.*, 117 id. 241.) The relator, John A. Roebling's Sons' Co., was, during the year 1889, a manufacturing corporation, and was, therefore, exempt from taxation during that year on that ground alone. (Laws of 1889, chap. 353.) Assuming that the relator was not exempt from taxation during and including the years 1880 to 1889, the comptroller erred in estimating the amount of the capital stock employed by the relator within this state during those years, as a basis of taxation. (*People ex rel.* v. *Wemple*, 133 N. Y. 328; *People* v. *Coleman*, 115 id. 178; *People* v. *Coleman*, 104 id. 240; *People* v. *Coleman*, 95 id. 554; *People* v. *D. & H. C. Co.*, 54 Hun, 598.)

*S. W. Rosendale, Attorney-General*, for respondent. The relator was not exempt from taxation during the years 1880 to 1889, inclusive, under the provisions of section 3 of chapter 542 of the Laws of 1880, as amended by chapter 361 of the Laws of 1881, and chapter 359 of the Laws of 1885, as a manufacturing corporation carrying on manufacture within this state. (*People* v. *H. S. M. Co.*, 105 N. Y. 76; 143 U. S. 305; *People ex rel.* v. *Wemple*, 133 N. Y. 323; *People* v. *K. Ice Co.*, 99 id. 181; *People* v. *N. Y. D. D. Co.*, 92 id. 487; *People* v. *Dains*, 38 Hun, 43; *People* v. *Fire Comrs.*, 73 N. Y. 437.) The finding of the comptroller as to the amount of capital of the relator employed in this state is supported by the evidence, and cannot be disturbed upon the review of his proceedings by certiorari. (*People ex rel.* v. *Wemple*, 133 N. Y. 323; *People* v. *A. C. & D. Co.*, 129 id. 558; *People* v. *S. C. O. Co.*, 131 id. 67.)

O'Brien, J.  The court below has confirmed the action of the state comptroller in assessing taxes under the Corporation Tax Law, upon the relator, for the years 1880 to 1889, inclusive, and the question presented by this appeal is whether the

1893.] People ex rel. Roebling's Sons' Co. v. Wemple. 585

N. Y. Rep.]        Opinion of the Court, per O'Brien, J.

record discloses any error of law in the proceedings. The relator is a manufacturing corporation, created by the laws of the state of New Jersey. It has an office and place of business in the city of New York, and its real estate there has an assessed value of $72,000. The principal, if not the sole, ground urged in support of the appeal is, that during all the years for which the tax complained of was imposed by the comptroller, the relator was a manufacturing corporation carrying on its manufacturing business within this state. If this contention be sustained, as matter of fact, then it would follow that the tax in question was improperly imposed for the reason that corporations so engaged are expressly exempted from the tax by the terms of the statute. The relator's charter, obtained under the laws of New Jersey, contemplated that its manufacturing operations should be carried on within that state and not elsewhere. The articles of incorporation state, "That the city of New York, in the county and state of New York, is the place where said company may have an office and store for the sale of their manufactured goods, and for the transaction of other business connected therewith," and by a subsequent amendment made thereto in 1888 it was further provided that the portion of relator's business which may be carried on out of that state, "is the buying and selling of materials, the making of contracts, the sale of the manufactured products of the said company, and the transaction of business incident thereto." The charter of the corporation is the measure of its powers, and from these provisions it would appear that it could not in fact have been engaged in manufacturing within this state during the years mentioned without disregarding the limitations upon its powers imposed by the law of its creation. While this consideration may not be conclusive in the determination of the question, yet it may well be presumed, in the absence of clear and satisfactory evidence to the contrary, that the relator is not engaged in a business in this state in violation of its charter, and which would subject it to dissolution in the jurisdiction of its creation. The business for which the corporation

was organized, as appears from the certificate of incorporation, is " the manufacture, buying and selling of iron, steel, wire, wire rope, and all other materials used in connection therewith." In the petition for the writ of certiorari the relator does not allege that it manufactures any iron, steel or wire within this state. It does allege in a very general way that during the years referred to it has been engaged in carrying on manufacturing here where " wire rigging, endless chains, etc., etc., and other useful articles have been manufactured." If these operations could be held to constitute manufacturing within the meaning of the statute they would cover a little more than one per cent of its whole business. The comptroller in his return to the writ states with more precision just what these operations consist of. It is there alleged that the building which the relator occupies in the city of New York is not occupied or used as a factory, but for its offices and general place of business and the storage of its goods. That on each of the storage floors two or three men are employed in adapting the manufactured articles to such purposes as may be required, such as attaching loops to wire ropes for use as switching rods, attaching hooks and loops to wire cables for various purposes, and that no wire or wire rope or any other article is manufactured here. On the relator's own showing the wire is all manufactured in New Jersey and sent to New York in coils, and there some operations are performed involving the employment of labor to fit the goods for the market. There is but little if any conflict between the statements of the petition and the return, and the latter may be considered as an amplification of the former, and in this court the return is conclusive (*People* v. *Fire Commissioners,* 73 N. Y. 437.) On these facts we think it cannot be held that the relator is engaged in the business of manufacturing in this state within the true intent and meaning of the statute, and hence was not entitled to the exemption from taxation which the statute grants to corporations so engaged. When it is apparent that all that is done here by a foreign corporation, organized for manufacturing purposes and engaged in such business in the

state of its creation, consists of some incidental additional work to its manufactured products sent here from the other state where its actual manufacturing operations are authorized by its charter and carried on, such as may be conveniently and suitably added at the place where the goods are exposed for sale, this is not carrying on the business of manufacturing within the meaning of the statute. Such a corporation cannot send its manufactured products here in an incomplete state, and then by putting the several parts together, and by adjusting them to each other, or by performing some comparatively slight operation upon the article or on the parts of which it is composed, though it may involve necessary labor before suitable for use or sale, entitle itself to exemption on the ground that it is carrying on a manufacturing business. The courts will not give to the language of the statute which confers the exemption any strained or unnatural construction, but it must be made to appear that actual manufacturing operations are carried on here in the ordinary sense and meaning of the term. (*People ex rel. Seth Thomas Clock Co.* v. *Wemple*, 133 N. Y. 323.) While there is no reason to impute bad faith to the relator or any intent to evade the statute, yet we think that the court below correctly held upon the facts that it was not entitled to the benefit of the exemption. The tax assessed upon the relator for the ten years was $9,403.79. The jurisdiction to tax and not the measure of taxation was the principal question presented to the comptroller. The relator had full opportunity to be heard as to the amount of the tax before it was imposed, and even after that upon an application for a readjustment on the ground that it was excessive, but it does not appear that it made any complaint on that ground before the officer whose duty it was to make the assessment, with the exceptions which will be presently referred to. His determination as to the amount of the tax should not be disturbed now unless it clearly appears to be erroneous. (*People* v. *Am. Con. & Dredging Co.*, 129 N. Y. 558; *People* v. *Southern Cotton Oil Co.*, 131 id. 64; *People* v. *Seth Thomas Clock Co., supra.*)

The basis of the tax was the amount of the relator's capital employed within this state. This was ascertained by computing the value of the stock in trade here during the year in question, its other personal property, the average monthly bank balance, the rentals paid and the value of the real estate owned and used in its business here. These were all proper elements to be considered in determining what portion of the capital was employed within this state. Without regard to the details from which the basis of the tax was made up, we think it sufficient to say that in the relator's petition it appears that but two objections were made to the manner in which the capital stock employed in this state was ascertained. These were : (1) That the comptroller erred in estimating the capital stock so employed at the actual value of the property instead of the value of the shares at par ; and (2) that the value of the real estate was fixed, not according to the assessment made by the local assessors, but according to the judgment of the comptroller himself, which is said to be an arbitrary estimate. In determining the actual capital of a corporation for the purpose of general taxation, the true value of its corporate assets, less the debts and obligations, and not the market value of the shares is the rule of assessment. (*People* v. *Coleman*, 126 N. Y. 433.)

If the statute under which the comptroller proceeded prescribes a different method, it does not appear that its adoption would result more favorably to the relator or that an excessive tax has resulted from the course pursued. With respect to the real estate he was not bound by the value placed upon it by the local assessors. He is made by the statute an assessor himself and he had a right to estimate its value according to such information as he could obtain or upon his own judgment. Moreover, it should be observed that the relator neglected or refused to comply with the statute which requires it to make annual reports to the comptroller. The first report made was in 1891, and then only under the coercive measures adopted by the comptroller and which did not in many material particulars comply with the statute.

The position of the relator was that it was not subject to taxation for any sum whatever, and the comptroller was thus obliged to get at the facts as best he could.   The statute proceeds upon the theory of permitting corporations in the first instance to assess themselves by their annual report.   If this is fairly made, in compliance with the law, the comptroller should, and, no doubt, in most cases does, adopt it, and he proceeds to make the assessment himself only in those cases where no report is made or where he has good reason to believe that it is not correct.   When the corporation makes a fair report at the time required by law, it has no reason to fear any unjust or oppressive action on the part of the state, but when, after the lapse of ten years, the officer charged with the duty of collecting the tax is obliged to make the assessment and obtain the necessary information, his action should not be disturbed unless it clearly appears to be unjust or based upon some erroneous principle.   The relator has never given to the state authorities its own estimate of the burden which should be imposed under the law, except to deny all liability whatever, and after a careful examination of the record, we are not able to say that any legal principle has been violated or any injustice done.

For these reasons we think the order appealed from should be affirmed, with costs.

All concur, except MAYNARD, J., not sitting.

Order affirmed.