EDWIN EINSTEIN, Appellant, *v.* THE ROCHESTER GAS AND ELECTRIC COMPANY et al., Respondents.

There is no implied authority either in the officers, agents or stockholders of a corporation, to increase its capital stock, and this may only be done in the manner prescribed by its charter or by some express legislative authority.

Plaintiff's complaint alleged in substance these facts : R., plaintiff's assignor, being the owner of the exclusive right to sell certain patented machines and apparatus for electric lighting, entered into an agreement with certain persons for the organization of a stock company for the purpose of introducing that method of electric lighting in the city of Rochester. The agreement provided that forty-eight per cent of the capital stock of the corporation should be transferred to R. in consideration of his assignment to the corporation of his rights under the patents for Monroe county, and also forty-eight per cent of any increase of the capital stock. Defendant, the B. E. L. Co., the contemplated corporation, was thereupon organized, and by a contract executed between it and R., the latter assigned to it his rights under the patents for Monroe county, and it agreed that in case its capital stock should be at any time thereafter increased (save a specified amount of increase which might be issued and sold for cash) forty-eight per cent of such increase would be issued and delivered to R. The company was prohibited from selling any of its interests or rights without the consent of R., but the right of any stockholder to sell his stock was recognized. Subsequently R. assigned all his rights and interests to plaintiff. Thereafter a consolidation was proposed between said corporation and three other electric and gas light corporations in said city, but was abandoned because plaintiff would not waive his right to the forty-eight per cent of increase of stock; thereupon the three other corporations consolidated, and the new corporation thus organized

purchased all the stock of the B. E. L. Co., giving in exchange for each share so purchased five shares of its own stock, and thus it acquired the control and practical ownership of all the properties of the B. E. L. Co.; the corporate organization of the latter, however, was kept up, although the persons constituting its board of directors were also directors of the consolidated corporation. Plaintiff claimed that the new corporation had thus "completely absorbed," and was, to all intents and purposes, the old corporation, and that through the process by which the capital stock of the latter was acquired by the former there was an increase of such capital stock, and that plaintiff was entitled to forty-eight per cent thereof. On demurrer to the complaint, *held*, that the facts alleged did not effect such an increase of the capital stock of the B. E. L. Co. as entitled plaintiff to the specified percentage thereof; and so, that the demurrer was properly sustained.

Reported below, 77 Hun, 149.

(Argued April 23, 1895 ; decided April 30, 1895.)

Appeal from an interlocutory judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made March 27, 1894, which reversed an order of Special Term sustaining a demurrer to the complaint.

On defendants' demurrer to the complaint.

This action is to compel the defendant, the Rochester Gas and Electric Company, to issue to the plaintiff four hundred and eighty thousand dollars, par value, of its paid-up stock; or, in default thereof, that the defendants be required to pay to him the par value thereof.

The plaintiff's assignor, Rowley, became the owner through a contract with the Brush Electric Company, of Cleveland, O., of the exclusive right to sell dynamo electric machines and apparatus made under the Brush patent for electric lighting and electroplating. Rowley agreed with certain persons in the city of Rochester respecting the organization of a stock company, with a capital of one hundred thousand dollars, for the purpose of introducing the Brush electric light into that city. By the agreement forty-eight per cent of the capital stock of the company was to be paid over to Rowley, as a. consideration for an assignment by him of his rights under the Cleveland contract, and, also, forty-eight

per cent of any increase of the capital of said company. After the formation of the Rochester company, under the name of the Brush Electric Light Company of Rochester, New York, one of the defendants in this action, a formal agreement was executed between that company and Rowley; through which Rowley assigned to it his rights under the Brush patent for Monroe county. The contract contained this agreement on the part of the company (after having recited the issue and delivery to him of forty-eight thousand dollars of paid-up capital stock as a consideration for the assignment), viz : "That if at any time hereafter the said capital stock of the said party of the second part shall be increased (otherwise than for stock issued for cash paid therefor at the time of such issue at par to the extent of one hundred thousand dollars [$100,000] in addition to the present capital) forty-eight per centum of the par value of such increase shall be issued and delivered to said party of the first part, or his assigns, full paid up.   *   *   *   And the said party of the second part for itself, successors and assigns, covenants, promises and agrees to and with said party of the first part, his successors and assigns, that in case at any time hereafter the capital stock of said party of the second part shall be increased (otherwise than for cash paid for the said increase at the time at par to the extent of one hundred thousand dollars [$100,000] in addition to the present capital), that then and in that case said party of the second part will issue and deliver to the said party of the first part, his successors or assigns, forty-eight per centum, in amount, of the par value fully paid up, of such increase as a part of the consideration for this assignment.   *   *   *   It is expressly agreed between the parties hereto that the party of the second part shall not sell or dispose of any of its interests, franchises or rights under this contract without the consent of the party of the first part, or his assigns, in writing. This agreement shall not, however, prevent any stockholder from disposing of his stock if he elect so to do." It was subsequent to the making of this latter agreement, that the

plaintiff became possessed, by assignment, of Rowley's interest and rights under the various agreements. Subsequently, with the plaintiff's consent, there was an increase of its capital stock to the extent of one hundred and fifty thousand dollars in cash, in addition to the one hundred thousand dollars stated in the contract between the company and Rowley; thus making the whole capital stock of the company two hundred and fifty thousand dollars. Some years later a consolidation was proposed between the Brush Company and two other electric light companies in that city and the Rochester Gas Company. This project of consolidation, however, was abandoned, because of the inability to secure the plaintiff's waiver of his right to forty-eight per cent of an increase in the stock of the Brush Company of Rochester under his contract; such increase being desired in the capital stock of all the four companies upon consolidation. Thereupon, the Rochester Gas Company and the two other electric light companies of Rochester consolidated into a single corporation, called the Rochester Gas and Electric Company, the present defendant, with a capital stock divided into forty-three thousand shares of one hundred dollars each. Of this stock a certain amount was apportioned to the stockholders of each of the consolidating companies and there were retained in the treasury of the consolidated company twelve thousand five hundred shares, which the directors were authorized to issue in the purchase of not less than a two-thirds interest in the capital stock of the Brush Company, at the rate of five shares of the stock of the consolidated company for one share of the Brush Company. In pursuance of this plan the new company acquired all of the Brush Company's stock in exchange for the twelve thousand five hundred shares at the rate mentioned. The Rochester Gas and Electric Company, in this way, acquired the control of the Brush Company and the practical ownership of all its properties; but the corporate organization of the Brush Company has been kept up, with a board of directors and with officers, although the persons constitut-

ing the board of directors are also directors of the consolidated corporation.

These facts appear in the complaint of the plaintiff, and his claim is that, to all intents and purposes, the Rochester Gas and Electric Company is the Brush Company, and that, through the process by which the shares of the stock of the Brush Company were acquired by the Rochester Gas and Electric Company, the capital stock of the former company was virtually increased by just one million of dollars, and that the directors and stockholders of the Brush Company have, by indirect means, effected an increase of the capital stock of the company with the view of preventing his assertion of a claim under his contract to receive forty-eight per centum of any increase of the capital stock.

A demurrer to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action, was overruled at the Special Term and judgment ordered thereon for the plaintiff. Upon appeal by the defendants to the General Term, that court reversed the judgment of the Special Term; but gave leave to the plaintiff to appeal to this court from the interlocutory judgment of reversal.

*George F. Danforth* for appellant. The facts stated in the complaint are admitted by the demurrer, and the question for the court to determine is, whether upon them the plaintiff is entitled to any relief. (*Marie* v. *Garrison*, 83 N. Y. 14–23; *Wetmore* v. *Porter*, 92 id. 76; *Milliken* v. *W. U. Tel. Co.*, 110 id. 403.) Even a statute cannot be used as an instrument of fraud. (*Riggs* v. *Palmer*, 115 N. Y. 506.) The transaction cannot be sustained as coming within the statute permitting one corporation to purchase stock of another corporation. (Stock Corporation Law, Laws of 1892, § 40; *Brand* v. *Jessup*, 106 U. S. 478; *Booth* v. *Bunce*, 33 N. Y. 139.) In asking relief the plaintiff invokes the familiar principle on which courts of equity proceed — that whosoever is found in possession of a trust fund under circumstances which charge him with knowledge of the trust is bound in respect to that

special property to the execution of the trust and to account as trustee to whoever is beneficially interested in such fund. (*Adair* v. *Shaw*, 1 Sch. & Lef. 243, 262; *In re Howe*, 1 Paige, 214; *Cook* v. *Tullis*, 18 Wall. 332–341; *Taylor* v. *Plumer*, 3 M. & S. 562; Story's Eq. Juris. 1258; *Newton* v. *Porter*, 69 N. Y. 133.) The Brush Company, by the contract of assignment and the possession of property in which the plaintiff had an interest, took it to that extent in trust, and the relation of those parties was that of trustee and *cestui que trust.* (*Brewster* v. *Hatch*, 122 N. Y. 349; *Barnes* v. *Brown*, 85 id. 527; *Mahoney* v. *Boyle*, 141 id. 462; *Milliken* v. *W. U. T. Co.*, 110 id. 407; *Morris* v. *Whither*, 20 N. Y. 41; *Smith* v. *Holbrook*, 82 id. 562; *Murdock* v. *Gilchrist*, 52 id. 252.) The fiction that a corporation is a legal entity, distinct from the persons who compose it, can never be resorted to when it enables persons composing the corporation to work an injury to any one or perpetrate a fraud upon anybody. (*D. M. G. Co.* v. *West*, 50 Iowa, 16–25; Morawetz on Corp. § 818; *Booth* v. *Bunce*, 33 N. Y. 139–156; 3 M. & C. 773; *U. S.* v. *Danbridge*, 12 Wheat. 69; *Holmes* v. *Gilman,* 138 N. Y. 369; *Disbrow* v. *Harris*, 122 id. 366.) Part only of the purchase price of the rights and privileges was paid to the plaintiff, and he may now enforce his equitable lien for the residue against the legal interests which the defendants have acquired under the new corporation. (*Phyfe* v. *Wardell*, 5 Paige, 268; *Stanley* v. *C. & B. R. Co.*, 3 M. & C. 782.)

*Edward Harris* for respondent. Only the material allegations of fact set forth in the complaint are admitted by the demurrers. (*Bonnell* v. *Griswold*, 86 N. Y. 294; *Bogardus* v. *N. Y. L. Ins. Co.*, 101 id. 328; *Masterson* v. *Townshend*, 123 id. 458.) There has been no increase in the capital stock of the Brush Electric Light Company of Rochester, N. Y. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30; *S. M. D. Co.* v. *Ropes*, 6 Pick. 23; *Smith* v. *Goldsworthy*, L. R. [4 Q. B.] 430; *R. Co.* v. *Allerton*, 85 U. S. 233.) The complaint states no cause of action against the Rochester Gas and Electric

Company. (Laws of 1892, chap. 691, §§ 8–10 ; Laws of 1890, chap. 567.) The Brush Company has not been merged with the consolidated company. (*Barnes* v. *Brown,* 80 N. Y. 527.) Neither of the defendants is responsible for the intent of the officers, directors and managers of the consolidating companies and of the Brush Company. (Morawetz on Corp. 234, 341.)

*Per Curiam.* In the view that we take of this case, it is unnecessary to consider the appellant's argument as to the rights gained through his contract with the Brush Company, otherwise than with respect to the question of whether there has been an increase of the capital stock of that company. Assuming all that he claims, in regard to his absolute right under the contract to receive forty-eight per cent, of any increase of the capital stock, we do not think it can be said that there has been any such increase effected through the transactions referred to. It may be perfectly true that the transaction with the Rochester Gas and Electric Company, by which that company acquired all of the stock of the Brush Company, at the rate of five shares of the former for one of the latter, was a device, adopted by the officers and stockholders of the latter company, to accomplish by indirect means what could not be done directly, because of their inability to secure the appellant's consent, or to agree upon terms with him. But it was a possible transaction and one which the contract did not contemplate or provide for. The language of the contract is explicit with respect to what the company agreed to do and that is "that in case at any time hereafter the capital stock    *    *    *    shall be increased *    *    *    that then in that case said party of the second part (the company) will issue and deliver to the said party of the first part (Einstein's assignor)    *    *    *    forty-eight per cent *    *    *    of such increase." No condition of things will meet that provision, unless there be, in fact, as in law, an increase of the capital stock. Now the capital stock of the Brush Company, which was $250,000, is to-day $250,000 and

it is only by regarding the holdings by the former stockholders of the Brush Company of the shares of capital stock of another company, to wit: The Rochester Gas and Electric Company, that it can be supposed that the capital of the company is larger, as the result of the transactions complained of, than it was before. But that notion is quite untenable. There is but one way by which the capital stock of a company can be increased and that is in the manner authorized by its charter, or by some express authorization of the legislature of the state. No acts of the officers or agents of the company are competent to enlarge the capital stock; nor can the stockholders do so, save in the particular manner pointed out by the statute. There is no such thing as an implied authority to increase or diminish the capital stock of a company. The transaction in this case was simply one whereby all the stockholders of the Brush Company have parted with their stock to the Rochester Gas and Electric Company, upon certain terms which had been recommended by the directors. The appellant's agreement forbade the company from selling any of its interests or rights without his written consent; but it expressly recognized and preserved the right of any stockholder to dispose of his stock if he so elected. The Rochester Gas and Electric Company had the right to purchase, and the consequence was that it became a stockholder in the Brush Company in the place of those who, by transfers of their stock, had ceased to be stockholders therein. But that has no effect upon the Brush Company's stock, except to change the ownership; and that the Brush Company is to-day a distinct and existing organization, with its own officers and board of directors, and with a capital stock of $250,000, is an indisputable fact and is conceded. The argument of the appellant, that the proceedings through which the Rochester Gas and Electric Company was formed, and through which it subsequently acquired all of the stock of the Brush Company, "transmuted the stockholders of the Brush Company into stockholders of the Rochester Gas and Electric Company," may be perfectly true; but the stock of the Brush

Company never changed in form or amount. All that took place was a change of its ownership.

If it is true, as alleged in the complaint, that the Rochester Gas and Electric Company has "completely absorbed" the Brush Company and is infringing upon any of its rights, by the use of the patents which were assigned to it; or if it is, in other legally appreciable ways, violating any of its corporate rights, then the appellant, if his contract with the company gives him such an interest in the corporation and such a standing in court as to enable him to assert his rights, or the rights of his company, is not precluded from seeking relief in a proper action. Whether his having ceased to be a stockholder (and he disclaims here any right of action in that character) affects his capacity to bring such an action, in assertion of the corporate rights of the Brush Electric Company, is a serious question about which grave doubts may be entertained, but which we are not called upon now, and which we do not undertake, to decide. The appellant's action must fail, if there has not been that increase of capital stock which his contract contemplated and provided for and, as we think that no such change was effected by the transactions set forth in the complaint, it follows that the judgment of the General Term, which reversed the interlocutory judgment overruling the demurrer of the defendants to the complaint, was correct and should be affirmed, with costs to the respondent; but with leave to the plaintiff to amend his complaint within twenty days after service upon his attorneys of a copy of the order entered upon our remittitur.

All concur, except BARTLETT, J., not voting, and HAIGHT, J., not sitting.

Judgment accordingly.